IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2008

## STATE OF TENNESSEE v. TOMMY LEE CLARK

**Direct Appeal from the Circuit Court for Madison County**
**No. 06-489    Roy B. Morgan, Jr., Judge**

**No. W2007-01829-CCA-R3-CD  - Filed August 11, 2008**

The defendant, Tommy Lee Clark, was convicted of aggravated burglary, a Class C felony; attempted aggravated burglary, a Class D felony; and possession of a deadly weapon other than a firearm with the intent to employ it during the commission of a dangerous offense, a Class E felony. The trial court sentenced him to fifteen years, twelve years, and six years, respectively, and ordered that each sentence run consecutively for an effective sentence of thirty-three years.  On appeal, the defendant argues that (1) the evidence was insufficient to support his convictions for aggravated burglary and attempted aggravated burglary because the State presented no proof regarding his intent to commit a theft; (2) the indictment for attempted aggravated burglary was defective because it did not state an essential element of the offense; (3) the trial court erred in holding that a box cutter is a deadly weapon; and (4) the trial court erred in imposing consecutive sentencing.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Susan D. Korsnes, Assistant Public Defender (on appeal), and Joseph T. Howell, Assistant Public Defender (at trial), for the appellant, Tommy Lee Clark.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

**State's Proof**

Scott Long testified that he had lived on Campbell Street in Jackson for about ten years. At around 9:30 p.m. on June 23, 2006, Long was sitting in his backyard when he heard glass break. He then observed the defendant, who was wearing a white hat, orange shirt, and blue jeans, walking across a parking lot adjacent to his house. He walked around to the front of his house and called the police. He testified that the defendant was standing in front of the house across the street, acting "irate" and "belligerent." Long then spoke with Steve Russell, who lived across the street, and learned that Russell's front window had been broken. When the police arrived, Long spoke with Officer David Knolton, then checked on another neighbor. On cross-examination, Long testified that he did not see the window break but only heard glass breaking. He acknowledged that he had drunk "about two or three" beers that night.

Steve Russell testified that he had lived in a duplex on Campbell Street since 1985. At around 9:30 p.m. on June 23, 2006, he was in his kitchen when he heard a loud noise, "like somebody bounced a basketball off the wall on my neighbor's side of the house." He then heard someone "hollering and screaming," although he could not understand what was being said. He returned to the front of his apartment and noticed that his curtains were over his desk, as though someone had reached inside. He went outside and encountered Long, who asked if his window had been broken. On cross-examination, Russell testified that he found nothing missing from his apartment that night. He said two window panes and part of the window frame were broken.

Joseph Martinez testified that he lived on Campbell Street with his fiancée, ten-year-old stepdaughter, and fourteen-month-old daughter. At around 9:30 p.m. on June 23, 2006, he was watching a movie in his bedroom with his fiancée when one of his dogs began making noise. Five to ten seconds later, he heard "a big crash" in the front of the house. He ran to the front door, looked out, and saw the defendant run across his yard, turn around, and run the other direction. Shortly thereafter he heard a second crash coming from his stepdaughter's bedroom.[1] He went to the bedroom and found the defendant with his hands and head inside the window. The defendant was bleeding and holding a box cutter. Martinez kicked at the defendant and told him he was going to get his firearm. When he returned, the defendant was gone. On cross-examination, Martinez testified that he could not recall whether the box cutter's blade was extended. He stated that no items were missing from his stepdaughter's room.

Jackson Police Officer David Knolton testified that he responded to a possible break-in on Campbell Street on June 23, 2006. When he arrived, he observed a broken window pane at Russell's apartment. While speaking with Long and Russell, he heard "[a] lot of yelling" coming from down the street. He approached on foot and found Martinez and the defendant confronting one another. The defendant was standing next to a blue truck, and Officer Knolton saw him attempt to hide behind the truck as Officer Brian Turner drove by in his patrol car. The defendant told Martinez, who was carrying a firearm, "Hey, I'm sorry, man. I'm sorry. I'm sorry." Officer Knolton then identified himself as a police officer and took the defendant into custody. He testified that the defendant was bleeding "pretty profusely" from his forearm.

_____

[1] His stepdaughter was not home at this time.

Jackson Police Officer Brian Turner testified that he responded to an attempted burglary call on Campbell Street on June 23, 2006. When he arrived, Officer Knolton told him that he had heard a disturbance farther down the street, so he drove north in his patrol car as Officer Knolton approached on foot. As he drove down the street, he received a call that someone was attempting to enter Martinez' house. Officer Knolton then radioed that he had the defendant detained in front of Martinez' house. Officer Turner testified that he found a red box cutter with the blade open next to the blue truck.

**Defense Proof**

Cammie Neal, a physician's assistant at Jackson-Madison County General Hospital, testified that she treated the defendant on June 23, 2006, for three lacerations on his left forearm. She said she did not observe any shot or pellet wounds on the defendant. On cross-examination, Neal testified that the defendant's toxicology report revealed the presence of alcohol and cocaine in his blood.

The defendant testified that he dropped off his cousin on Campbell Street on June 23, 2006. He then went to visit a friend, Terry Hardin, who had been sick. He said that he eventually ran from Hardin's house on foot because "[d]ude was shooting at me." He explained his actions after fleeing Hardin's house:

[Defense Counsel]: You were being shot at?

[Defendant]: Yeah, I know I fell down. But anyway, I fell down. I got up. I was hollering going down the street, so one man come [sic] to the window, you know. He wouldn't come out, so – and, you know, I run around his house and run back in front. I was hollering. I couldn't get nobody. So then I took a run and I jumped in the pin [sic] with a great big old dog that was on a chain. So I run back around front. So I went back up that way where I just had left 'cause there was some peoples coming from the back, and that's when I kicked out a window. I didn't knock it out, I kicked it out.

The defendant said that he kicked out the window to get help, not to gain access to the house. He acknowledged kicking in a second window after not receiving help at the first house but said that he did not take anything from either house. He further acknowledged that he was carrying a box cutter but said it was in his pocket. Asked about Martinez' testimony that the box cutter was in his hand, the defendant said, "Mr. Martinez is lying." He testified that he did not intend to use the box cutter to break into Russell's or Martinez' house.

On cross-examination, the defendant denied using cocaine that night. He testified that he did not know who attacked him at Hardin's house or why he was attacked. He stated that he did not know whether he was shot that night. He testified that he ran through the parking lot next to Long's house and that Long's testimony that he was walking through the parking lot was a lie. He denied

attempting to enter Martinez' house through the window and again asserted that Martinez' testimony was false.  He further denied that he hid behind the blue truck when Officer Turner drove by and asserted that Officer Knolton's testimony on this point was false.

Following deliberations, the jury found the defendant guilty of aggravated burglary, attempted aggravated burglary, and possession of a deadly weapon other than a firearm with the intent to employ it during the commission of a dangerous offense.

**Sentencing Hearing**

At the sentencing hearing, Steve Russell testified that it took him between eight and ten hours to repair his windows.  He said he paid for the materials, but his landlord reimbursed him $80 for his labor.  He testified that the offense had not affected his ability to enjoy his time at home. Regarding the appropriate punishment for the defendant, he stated "I'm here to see justice done to the maximum."

Joseph Martinez testified that the burglary had made his ability to enjoy his home "very uncomfortable" and that his home was on "high alert."  He stated that his stepdaughter frequently woke him and his wife[2] during the night, worried that someone was trying to break into the house. He said his wife had also had "a lot of restless nights because of it."  He stated that his family was very scared to continue living in the house.  He testified that the defendant bled onto some stuffed dolls and clothing which he had to discard.  He estimated the value of these items at about $50. Martinez testified that it took him about four and a half hours to board up his stepdaughter's windows and replace his broken storm door.  Asked about punishment, Martinez stated, "I would like to see the full extent of the law."

Bruce Ingram of the Tennessee Board of Probation and Parole testified that he compiled the defendant's presentence report.  The State introduced the presentence report as an exhibit to the proceedings.  The State also introduced as exhibits certified copies of judgments against the defendant for five counts of assault, vandalism, failure to appear, six counts of public intoxication, driving while unlicensed, second offense driving on a revoked license, three counts of driving on a suspended license, driving under the influence, two counts of misdemeanor theft of property, two counts of third degree burglary, armed robbery, first degree burglary, two counts of petit larceny, temporary use of a motor vehicle without the owner's consent, possession of a deadly weapon, passing a forged check under $100, attempt to commit a felony, and receiving and concealing stolen property.

In sentencing the defendant, the trial court stated:

---

[2] Martinez married his fiancee after the trial but before the sentencing hearing.

-4-

Thank you both. I've known [the defendant] a long time. I've seen him try his own cases before, stand up and argue his case and present it to the finder of fact before.

I remember the specifics of this case very well. [The defendant] testified, if I'm remembering correctly, at the trial and gave his position on what actually happened, in his opinion.

There being no real dispute, and I've reviewed [the defendant's] record again, a large portion of which I was familiar with from past experience, but in reviewing the record, it's clear that as to Count 1, the attempted aggravated burglary, he would be a [c]areer [o]ffender. The mandatory sentence that's set forth under the law is 12 years. His release eligibility on that sentence is at 60 percent. Again, release eligibility, as [the defendant] knows, is when you're first eligible for release but it's not an automatic release time. The fine imposed by the jury in this case was a $5,000 fine, and I'll let that stand for now. I don't know what possibility realistically it will ever be paid back, [sic] but we'll let it stand along with costs.

As to Count 2, the aggravated burglary, that would be a Range III. Considering the enhancement factors argued by the State and not finding any mitigating factors, although defense counsel did file some asking the Court to consider, the Court feels that the maximum sentence of 15 years would be the appropriate sentence in this case. [The defendant] has shown his inability to conform to the law and obey the law, repeated offender. That would be as a Range III. That is the 45 percent release eligibility.

. . . .

And that fine imposed was a $10,000 fine which the jury assessed and I will allow to stand.

And then as to Count 3, again the Court finds based upon the record presented by the State that this is a [c]areer [o]ffender situation, that being a conviction for possession of a weapon with intent to employ in the commission of a felony. The mandatory sentence under the law is a 6-year sentence. Again a 60 percent release eligibility. And the fine imposed was a $3,000 fine by the jury which I will allow to stand.

In considering the argument of consecutive versus concurrent, certainly again because of the repeated conduct of this Defendant and his failure to conform to the laws, he keeps coming back and coming back, the record speaks for itself, it appears that it would be appropriate to order that it be consecutive sentencing in this case .

. . . I'll run each of the three counts consecutive with each other under these circumstances.

## ANALYSIS

The defendant argues that the evidence was insufficient to support his convictions for attempted aggravated burglary and aggravated burglary because the State did not present proof that he intended to commit a theft when he attempted to enter Steve Russell's house and entered Joseph Martinez' house. He claims that his indictment for attempted aggravated burglary is defective because it did not allege that he entered the habitation with intent to commit a theft. He also argues that the trial court erred in holding that a box cutter is a "deadly weapon" and in imposing consecutive sentencing. The State argues that the evidence was sufficient to support the defendant's convictions, the defendant has waived his challenge to the sufficiency of the indictment by not presenting it prior to trial, and the trial court properly determined that a box cutter is a deadly weapon and imposed consecutive sentencing. As we will explain, we agree with the State.

### I. Sufficiency of the Evidence

Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A person commits criminal attempt who, acting with the culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (2006).

As relevant here, aggravated burglary is the entry of a habitation without the effective consent of a property owner with intent to commit a felony, theft, or assault. See Tenn. Code Ann. §§ 39-14-402(a)(1), -403(a) (2006). A habitation is any structure designed or adapted for the overnight accommodation of persons. Id. § 39-14-401(1)(A). The intent required for the offense of burglary may be established by circumstantial evidence. Bollin v. State, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). "In the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." State v. Ingram, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) (citations omitted).

The defendant argues that the evidence was insufficient to support his convictions for attempted aggravated burglary and aggravated burglary because the State offered no proof that he intended to commit a theft when he broke the windows in the victims' houses. Viewed in the light most favorable to the State, the proof at trial established that the defendant broke a window in the front of Steve Russell's house. Russell's curtains were draped over his desk as though someone had reached inside the house. The defendant also broke two windows in Joseph Martinez' house. When Martinez encountered the defendant, part of his upper body was through the bedroom window, and he was bleeding and holding a box cutter. As we have set out, in the absence of an "acceptable excuse," a jury may infer the intent to commit theft from the breaking and entering of a building containing valuable property. As was its prerogative, the jury chose not to accredit the defendant's

-7-

testimony that he was seeking assistance. The evidence was sufficient to support the defendant's convictions.

## II. Sufficiency of the Indictment

An indictment or presentment must inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In addition, Tennessee Code Annotated section 40-13-202 requires that an indictment "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment."

An indictment that achieves its "overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000). Our supreme court has held that an indictment is sufficient to satisfy notice requirements if it "contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense." Id. at 299 (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)).

The challenged indictment reads:

> THE GRAND JURORS of Madison County, Tennessee, duly empaneled and sworn, upon their oath, present that
>
> **Tommy Lee Clark**
>
> on or about June 23, 2006, in Madison County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly attempt to commit the criminal offense of Aggravated Burglary, by going to the residence of STEVE RUSSELL and attempting to enter the said residence by breaking the window glass, in violation of T.C.A. §39-14-403 and T.C.A. §39-12-101, all of which is against the peace and dignity of the State of Tennessee.

The defendant argues that the indictment is defective because it does not allege that he entered Russell's home with the intent to commit a theft. However, as the State correctly argues, the defendant has waived this argument by not presenting it before trial. At any time while a case is pending, a court may hear a claim that the indictment fails to show jurisdiction in the court or charge an offense. Tenn. R. Crim. P. 12(b)(2)(B). All other objections to the sufficiency of the indictment must be made prior to trial, or the issue will be deemed waived. Tenn. R. Crim. P. 12(b)(2)(B), (f)(1); State v. Kennedy, 649 S.W.2d 275, 279 (Tenn. Crim. App. 1982), overruled on other grounds by State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984). The defendant did not challenge the indictment

prior to trial and does not allege that it fails to show jurisdiction or charge an offense. Accordingly, this issue is waived.

Even if we were to reach the merits of the issue, the defendant would not be entitled to relief. The indictment lists the date and place of the offense, the act the defendant is alleged to have committed, and the statutes the defendant is alleged to have violated. This was sufficient to inform the defendant of the statute he was accused of violating, allow the entry of a proper judgment, and protect the defendant from double jeopardy. This assignment is without merit.

### III. Box Cutter as Deadly Weapon

Tennessee Code Annotated section 39-17-1307 states:

(a)(1) A person commits an offense who carries with the intent to go armed a firearm, a knife with a blade length exceeding four inches (4"'), or a club.

(2)(A) The first violation of subdivision (a)(1) is a Class C misdemeanor, and, in addition to possible imprisonment as provided by law, may be punished by a fine not to exceed five hundred dollars ($500).

(B) A second or subsequent violation of subdivision (a)(1) is a Class B misdemeanor.

(C) A violation of subdivision (a)(1) is a Class A misdemeanor if the person's carrying of a handgun occurred at a place open to the public where one (1) or more persons were present.

(b)(1) A person commits an offense who possesses a handgun and:

(A) Has been convicted of a felony involving the use or attempted use of force, violence or a deadly weapon; or

(B) Has been convicted of a felony drug offense.

(2) An offense under subdivision (b)(1) is a Class E felony.

(c)(1) A person commits an offense who possesses a deadly weapon other than a firearm with the intent to employ it during the commission of, attempt to commit, or escape from a dangerous offense as defined in § 39-17-1324.

(2) A person commits an offense who possesses any deadly weapon with the intent to employ it during the commission of, attempt to commit, or escape from any offense not defined as a dangerous offense by § 39-17-1324.

(3) A violation of this subsection (c) is a Class E felony.

As we understand, the defendant argues that he was convicted of violating section 39-17-1307(a)(1). He contends that the trial court improperly instructed the jury that "a deadly weapon means a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." He asserts that the trial court instead should have instructed the jury that the box cutter's blade length must exceed four inches for it to be considered a deadly weapon.

The State correctly argues, however, that the defendant was convicted of violating section 39-17-1307(c)(1). The judgment form states that the offense of conviction is "POSS WEAPON W/INTENT TO EMPLOY IN OFFENSE" and the statute violated is "39-17-1307(C)." As such, the trial court's instruction to the jury regarding the definition of the phrase "deadly weapon" was correct. See Tenn. Code Ann. § 39-11-106(a)(5) (2006). Moreover, this court has held that a box cutter is a "deadly weapon" as that term is defined in section 39-11-106. State v. John Liddell, No. W2005-00780-CCA-R3-CD, 2006 WL 2872473, at *4 (Tenn. Crim. App. Oct. 9, 2006). We find no error in the trial court's instruction to the jury.

## IV. Consecutive Sentencing

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for

the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2003).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A trial court, in its sound discretion, may impose consecutive sentencing in accordance with Tennessee Code Annotated section 40-35-115, if it finds any of the following criteria:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2006). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

The defendant argues that the trial court erred in imposing consecutive sentencing because "[t]his sentence is extreme given the facts of this case." He asserts that because he broke two

windows, caused less than $200 worth of damage, and did not take any property or injure the victims, consecutive sentencing was inappropriate. The State responds that the record supports the imposition of consecutive sentencing.

In ordering that the defendant's sentences be served consecutively, the trial court noted the "repeated conduct of this [d]efendant and his failure to conform to the laws" and stated "he keeps coming back and coming back, the record speaks for itself." We understand this as a finding that the defendant is an offender whose record of criminal activity is extensive. See Tenn. Code Ann. § 40-35-115(b)(2). The record supports this finding. The defendant's presentence report reflects nine felony and twenty-eight misdemeanor convictions, including four prior convictions for burglary. At the sentencing hearing, the State introduced certified copies of the judgments of conviction for thirty-two of these offenses. This proof was sufficient to justify the imposition of consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE